**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 22-cr-376 (JEB)** |
| **v.** | : | |
| | : | |
| **BRIAN SIZER,** | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Brian Sizer ("Sizer") to three years' probation and $500 in restitution.

### I.      Introduction

The defendant, Brian Sizer, a maintenance supervisor from western Pennsylvania, participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than 2.8 million dollars in losses.[1]

Sizer pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G): Parading, Demonstrating, or Picketing in the Capitol Building.  As explained herein, a sentence of three years of probation is appropriate in this case because: (1) Sizer observed rioters make a violent entry into the U.S.

---

[1] Although the Statement of Offense in this matter, filed on February 24, 2023, (Dkt. No. 23 at ¶ 6) reflects a sum of more than $1.4 million dollars for repairs, as of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

Capitol through the Parliamentarian Door; (2) Sizer observed numerous rioters climbing the scaffolding set up for the inauguration, climbing the walls of the U.S. Capitol, and attempting to break windows; (3) Sizer took over 90 photographs on his cell phone on restricted grounds demonstrating his enjoyment of the riot, including numerous smiling "selfies" inside and outside the U.S. Capitol building; (4) Sizer entered an office in the U.S. Capitol building without authorization; and (5) Sizer was not truthful with the FBI during his post-plea interview.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Sizer's crime support a sentence of three years' probation.

## II.      Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol.  *See* Dkt. Entry 1 (Statement of Offense), at 2.

### Brian Sizer's Role in the January 6, 2021 Attack on the Capitol

On January 5, 2021, Brian Sizer traveled with his wife[2] from their home in western Pennsylvania to Washington, D.C. to attend the "Stop the Steal" rally.  On January 6, Sizer and his wife listened to speeches, including that of the former President, and then walked from the Washington Monument area toward the U.S. Capitol.  As Sizer approached the Capitol building,

---

[2] Julia Sizer was charged and sentenced in Case No. 21-CR-621. The government recommended a sentence of 60 days' home detention, three years' probation, 60 hours of community service and $500 in restitution. Dkt. Entry 26. Judge Cooper sentenced Julia Sizer to 1 year of probation, a $2,000 fine, $10 special assessment and $500 in restitution. 2/1/2022 Minute Entry.

he saw throngs of other rioters, including rioters climbing the scaffolding erected on the west side

of the Capitol building.

 

*Image 1*                  *Image 2*

*Photographs taken by Brian Sizer*

The Sizers approached the Capitol building by walking through that scaffolding and going

up the stairs to the Upper West Terrace.

  

*Image 3*          *Image 4*          *Image 5*

*Photographs taken by Brian Sizer*

After climbing the steps through the scaffolding and reaching the Northwest Courtyard, Sizer and his wife paused to take a few "selfies" with smiles on their faces. Though they had every opportunity to leave at this point, they chose to move forward instead and enter the building.



*Image 6*                                                        *Image 7*

*Photographs from Julia Sizer's Cellular Phone*

The Sizers arrived in the Northwest Courtyard at approximately 2:33 p.m. The Northwest Courtyard is the area near at least two entrances to the U.S. Capitol that were broken into on January 6, including a door that is known as the Parliamentarian Door. The Parliamentarian Door is located on the Senate Side of the Upper West Terrace, near the Senate Wing Door. Brian Sizer took photographs and one video (Exhibit A[3]) of this area with his cell phone. Notably, the Parliamentarian Door was still closed at the time the video was recorded. During the video, a male voice, possibly Brian Sizer, can be heard saying loudly, "You can't be afraid to storm the Capitol building." Sizer also took a number of photographs at the Northwest Courtyard, including photographs of a rioter scaling the walls (Image 8), photographs of a rioter on a window washing apparatus trying to break into a window (Image 9) and a smiling "selfie" (Image 10):

---

[3] The government's exhibits will be provided separately to the Court and defendant.

  

*Image 8*        *Image 9*        *Image 10*

At approximately 2:42 p.m., a rioter used a crowbar to smash one of the glass panes on the

Parliamentarian Door. The rioter then reached through the broken window and opened the door.

Then the rioter and a number of others charged into the Capitol building. *See* Exhibits B and C.



*Image 11: Still Image from Exhibit B showing breach of Parliamentarian Door*

At the time of the breach, Julia and Brian Sizer were in the area and turned in the direction

of the door.



*Image 12: Still image from Exhibit D at 00:13 depicting Brian and Julie Sizer*

They then walked toward the newly-breached Parliamentarian Door as hundreds of rioters around them cheered about the break-in. Brian Sizer took photographs on his phone of the Parliamentarian Door seconds after it was breached.



*Image 13: Photograph from Brian Sizer's Phone of the Parliamentarian Door Post-Breach*

Approximately five minutes after the break-in, Julia Sizer entered the Capitol building (without Brian Sizer) through the Parliamentarian Door. As she entered the building, Julia took a video which recorded the sights and sounds Brian Sizer experienced when he followed minutes

later. *See* Exhibit E. Brian Sizer heard a loud alarm blaring overhead, and saw numerous rioters moving around in the hallway and the two nearby offices. After walking around for approximately two minutes, Julia Sizer left through the Parliamentarian Door at approximately 2:50 p.m.

A few minutes later, at approximately 2:54 p.m., Brian Sizer entered the Capitol with Julia.[4] As soon as he passed through the smashed Parliamentarian Door, Brian Sizer paused in the doorway and recorded the scene with his phone. *See* Exhibit F.



*Image 14: Still image from Exhibit F at 2:53:55 p.m.*

Sizer and his wife walked a few yards down the hallway and paused again, this time to take another "selfie":

---

[4] At the time of Julia Sizer's prosecution in case no. 21 CR 621, law enforcement was not aware that she entered the U.S. Capitol for a second time with Brian Sizer. Law enforcement learned about her second entrance after she was sentenced.



*Image 15: Still image from Exhibit F at 2:53:59 p.m.*

The Sizers then walked down the hallway for approximately two to three minutes. There, they encountered a line of police officers who were preventing rioters from proceeding further into the building. *See* Exhibit G.  The Sizers did not speak to the officers, but instead returned toward the Parliamentarian Door. Instead of leaving the Capitol through the open door, they turned right and entered a Senate office. Brian Sizer took photographs while in the office, including the below photograph of Julia laughing and sitting in one of the chairs. Near the bottom of the photograph, a pair of men's shoes are shown crossed on the coffee table indicating that while he took the picture, Brian was also sitting in a chair across from Julia with his feet up:



*Image 16: Photograph taken by Brian Sizer*

At approximately 3:00 p.m., Brian Sizer left the office and exited the building through the Parliamentarian Door.

*Brian Sizer's Post-Plea Interview*

Brian Sizer was interviewed pursuant to the conditions of his plea agreement on February 23, 2023. During the interview, Sizer admitted that as he walked towards the Capitol, he heard loud bangs. Though he claimed he did not see how the Parliamentarian Door was opened, he admitted that he knew he should not go inside.

But Brian Sizer also made several false statements and minimized his conduct. He falsely claimed he was "pushed" towards the Capitol building and was not able to turn around because of the crowd. As shown in the images above, Brian Sizer was not pushed, and had ample space to turn around if he had wanted to.  Brian claimed that when he entered the building, he heard only a "faint" alarm going off. As demonstrated by Exhibit E, the alarm Brian Sizer heard as he entered the building was piercing and loud.  Brian Sizer also claimed that he only entered the building with the goal of finding a police officer who could give them directions out of the area. Putting aside

the absurdity of this claim, Exhibit G demonstrates that although Brian Sizer encountered police officers after entering the building, he made no attempt to ask for directions.

*The Charges and Plea Agreement*

On October 27, 2022, the United States charged Brian Sizer by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G).  On November 3, 2022, Sizer was arrested following his self-surrender to the FBI.  On November 17, 2022, the United States charged Sizer by a four-count Information with violations of 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G).   On January 5, 2023, pursuant to a plea agreement, Sizer pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Picketing, and Demonstrating in the Capitol Building.  By plea agreement, Sizer agreed to pay $500 in restitution to the Architect of the Capitol.

**III.      Statutory Penalties**

Sizer now faces a sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G).  As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000.  The defendant must also pay restitution under the terms of his plea agreement.  *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).  As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

**IV.      Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of three years of probation.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Brian Sizer's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Sizer, the absence of violent or destructive acts is not a mitigating factor. Had Sizer engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Sizer's case is the timing and location of Sizer's entrance into the Capitol. Exhibit D shows the Sizers were close to the door and facing it at the time it was broken into by the rioter with the crowbar. Sizer's entrance through the Parliamentarian Door just a few minutes later, combined with his close proximity to the door at the time it was breached, and his later admission that he knew he should not go inside, all demonstrate that Sizer was aware the Capitol had been violently and illegally breached before he chose to enter. Sizer's knowledge of the violence and destruction used to get the door open show his awareness of the wrongfulness of his and other members of the mob's actions *before* he went in the building. But he went in anyway.

Sizer also took numerous photographs on Capitol grounds and in the Capitol building, including photographs of other rioters climbing on scaffolding or attempting to destroy property. These photographs demonstrate not only the absurdity of his claim that he was helpless to resist the pull of the crowd toward the Capitol – i.e. if he was being helplessly carried along, it is curious

he had the ability to take so many photographs – but are also further evidence of his awareness of the wrongfulness of his and others' actions.

Sizer's actions while inside the building are also aggravating and showcase his cavalier attitude on January 6. He heard the piercing alarm and walked over the broken glass on the floor. However, instead of turning around, he immediately stopped to take photographs, including a smiling selfie with his wife. Sizer then walked further down the hall where a line of police officers were attempting to stem the mob's progress into the building. Instead, Brian and Julia walked back toward the Parliamentarian Door (since police officers were blocking their further progress) and *still* did not exit. They turned right into an office, sat in chairs and took more smiling photographs. Only after taking several photographs and exploring the areas that were not blocked by police did Sizer finally leave the building.

Another aggravating factor is Brian's lack of remorse, as evidenced by his lack of candor with law enforcement about his actions on January 6. The government investigated and prosecuted Sizer's wife Julia for her illegal entrance into the U.S. Capitol for more than a year before Brian was prosecuted. Sizer had several opportunities to approach law enforcement about his own involvement during the investigation of his wife, but he did not. And even after Sizer himself was prosecuted, Sizer was still not truthful about his actions but claimed he only entered the building because he got swept up in the crowd and wanted help from law enforcement. But the evidence obtained from Sizer's phone clearly disproves that claim.

Each of these factors supports a sentence of three years' probation in this case.

### B.  The History and Characteristics of the Defendant

As set forth in the PSR, Brian Sizer has two prior criminal charges but neither resulted in a conviction.  Dkt. Entry 24 ¶¶ 23-26.  Sizer was educated and enjoyed financial stability. Sizer

has a background of relative privilege; this was not a crime motivated by poverty or necessity. He had many choices and opportunities not to participate in the attack on the U.S. Capitol but he voluntarily made another choice. Therefore, Sizer's history and characteristics are neither aggravating nor mitigating.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a higher sentence, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again."). This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Two factors indicate that there is a need for specific deterrence in Brian Sizer's case: (1) the evident enjoyment he experienced on January 6; and (2) his lack of remorse and minimizing statements to the FBI. As discussed above, Brian Sizer took numerous photographs and video of himself and his wife on U.S. Capitol grounds on January 6. In a number of those photographs, he or his wife are smiling, seeming to enjoy themselves. Couple that apparent enjoyment with his post-plea statements to FBI claiming that he was carried away by the crowd and only entered the Capitol building to get help from police and it's clear that Brian Sizer feels no remorse for his

actions on January 6. A defendant who does not recognize the wrongfulness of his actions is necessarily more likely to reoffend and therefore, more in need of specific deterrence.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, like this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[5] This Court must sentence Brian Sizer based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Sizer has pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A.  § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C.

---

[5] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

§ 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48-49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan)

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several

factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range of for a petty offense is zero to six months. Given that narrow range, a sentence of six months, at the top of the statutory range, will not create an unwarranted disparity with a sentence of probation only, at the bottom. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr.  at 23-24

("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71 (ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the Court may also consider the sentences imposed on similarly situated defendants. The most obvious comparator is Julia Sizer. However, a more serious sentence should be imposed for Brian Sizer than was imposed for Julia Sizer for at least two reasons: (1) additional evidence has been discovered since Julia Sizer's sentencing which indicates that the Sizers' crimes were more serious than was known at the time of Julia Sizer's sentencing; and (2) Brian Sizer's lack of candor with law enforcement indicates the need for a more serious sentence for specific deterrence.

Other similarly situated defendants include:

- *United States v. William Sywak*, 21-CR-949 (RC). Sywak entered the U.S. Capitol through a recently broken door – the Senate Wing Door. However, unlike Sizer, Sywak does not appear to have actually witnessed the smashing of the Senate Wing Door and nearby windows. Like Brian, Sywak witnessed and documented standoffs with police and other violent and destructive elements of the riot. Though Sywak spent more time inside the Capitol, 20 minutes,

rather than 6 minutes, Sywak didn't enter any offices the way Brian did. And like Sywak, Brian was not honest with the FBI about his motivations for entering the Capitol. Judge Lamberth sentenced Sywak to two months' home detention and 12 months' probation.

- *United States v. Glenn Croy*, 21-cr-162-BAH. Like Sizer, Croy witnessed violence as he made his way through the West Plaza up to the Senate Wing Doors. Croy entered shortly after that door was breached, and joined rioters in the Crypt. He filmed the events as they unfolded, and later shared on social media that he had "stormed the Capitol." Chief Judge Howell sentenced Croy to 14 days in custody of community confinement, three months of home detention, and 36 months of probation.

- *United States v. Matthew Mazzocco*, 21-cr-54 (TSC). Mazzocco made his way up to the East Rotunda Door at the time of its breach, took photographs of rioters scaling walls and scaffolding on his way and took a selfie of himself in front of the East Rotunda Door very close in time to its breach by rioters. Mazzocco also entered a conference room in the Capitol building without authorization. Judge Chutkan sentenced Mazzocco to 45 days' incarceration.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an

appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

**V.      Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors.  Balancing these factors, the government recommends that this Court sentence Brian Sizer to three years' probation and $500 restitution.  Such a sentence protects the community, promotes respect for the law, and deters future crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:      */s/ Kaitlin Klamann*
KAITLIN KLAMANN
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
Kaitlin.klamann@usdoj.gov
(202) 252-6778
IL Bar No. 6316768